FIRST NATIONAL BANK OF YOUNGSTOWN, OHIO, v. McKINNEY, REC'R.

JUDGMENT NOTE BY INSOLVENT CORPORATION PREFERRING CREDITORS—TRANSFER OF ACCOUNTS—NOT UNLAWFUL, WHEN.

It is neither unlawful nor wrongful for a foreign corporation, although insolvent and in the hands of a receiver, to make and deliver to a creditor residing in this state, a judgment note with intent that judgment thereon shall be taken in another state, and property there situated appropriated to its payment in accordance with the laws of the state where the property is found. Nor does the assignment by a foreign corporation to a creditor residing in this state, of the accounts which it has and owns, and which has its *situs* in the home of the corporation, fall within sec. 6344, Rev. Stat., or within Rouse v. Bank, 46 O. S., 493.

HALE, J.

The case of The First National Bank of Youngstown, Ohio, against Price McKinney, receiver of Corrigan, Ives & Co., comes into this court by appeal, and has been submitted upon the evidence. There is very little disagreement or conflict of testimony as to the facts.

The essential facts are, that the Douglas Furnace Co. is a corporation incorporated under the laws of Illinois. The objects and purposes of the incorporation were to manufacture, among other things, iron. The business of the corporation was prosecuted in the state of Pennsylvania where its tangible property was located. In the progress of its business it had become, prior to July 18, 1893, indebted to the firm of Corrigan, Ives & Co., in this state, in the sum of $175,000 for ore, which that firm had furnished to the corporation. Corrigan, Ives & Co., at the date I have named, July 18, 1893, for some reason had gone into the hands of

a receiver, and its affairs were being conducted by Price McKinney, as receiver.

On July 18, 1893, this corporation made and delivered to Price McKinney, the receiver, its note, with power-of-attorney authorizing confession of judgment attached, for the whole sum due from the corporation, The Douglas Furnace Co., to Corrigan, Ives & Co. That note was made and executed in the city of Cleveland in this state. At the same time, the corporation through its officers, assigned and transferred to Price McKinney, receiver, all the accounts which it held against parties, amounting to some $40,000. The Douglas Furnace Co., at the time, was probably insolvent. The plaintiff, The Youngstown National Bank, was a corporation organized under the banking act of the United States, and doing business at Youngstown, Ohio. The Sharon National Bank was a corporation organized under the same act and doing business at Sharon, Pennsylvania.

Price McKinney, on receiving the judgment note of the Douglas Furnace Co., immediately went to Pennsylvania where some tangible property of the corporation was located, procured a judgment upon his note, and levied an execution upon the property of the insolvent corporation. The property was sold on execution, and, by the order of the court in which the judgment was taken, distributed to the parties entitled to receive it according to the judgment of that court. Certain preferred claims were paid to laborers, taxes, etc., and the balance was paid over to McKinney.

Now the Youngstown Bank, and the Sharon Bank by its cross-petition, are claiming that the money collected by the receiver, McKinney, on the accounts that were transferred as I have stated, and the money paid in Pennsylvania, should be declared as held by McKinney in trust for the claim that he held against the insolvent corporation and the other creditors of the insolvent company, or at least the two banks represented in the case.

It will be noticed that the corporation was a foreign corporation, organized under the laws of Illinois; that the tangible property of that corporation was all in Pennsylvania; two of the creditors interested in this action resided in Ohio; one in Pennsylvania.

It will be noticed that the case presents, then, some very interesting questions of law upon these facts, and deserves a more extended discussion than we are able to give it this morning. We shall content ourselves with announcing at least one reason for the judgment that we shall enter, and shall not discuss very many of the interesting questions that might be discussed in the disposition of the case.

The petition, on its face, seems to be aimed, and by its terms intended to invoke the remedy provided by the sec. 6344, Rev. Stat., and asks to have declared void the transactions between the furnace company and Price McKinney, receiver, and declare void the transactions by which the money was received by Price McKinney through the Pennsylvania courts, and McKinney declared to hold all this property in trust for the benefit of the creditors of the Douglas Furnace Co.

First, we hold that the transaction is not within the terms of sec. 6344, Rev. Stat., and the action is not properly brought under the provisions of that statute and can not be sustained as such action. The language of the statute is that "All transfers, conveyances and assignments made by a debtor or procured by him to be made with intent to hinder, delay, or defraud creditors, shall be declared void at the suit of

any creditor;" and then provides for the administering of any property thus fraudulently conveyed.

This transaction was not, in the judgment of the court, a conveyance made by the Douglas Furnace Co. to Price McKinney, receiver, with the "intent to hinder, delay, or defraud creditors." The purpose of the transaction was to secure an honest debt, which resulted in a preference of one creditor over others; and the real question is whether this preference can be maintained in equity against the claims of the plaintiff, the Youngstown Bank, and the cross-petitioner, the Sharon National Bank.

It may well be doubted whether any other relief under the allegations of the petition, is sought than that provided by the statute. But we have considered the question as an equitable action based on the decision of the case of Rouse v. Bank, 46 O. S., 493.

Can the claim of the plaintiff be sustained upon this theory? The plaintiff, as we have seen, is a corporation organized under the National Banking Act, doing business in Ohio. The cross-petitioner is a corporation organized under the same act, doing business in Pennsylvania. Price McKinney, the receiver, is a resident of Ohio and was at the time of these transactions; so was the firm which he represented. The judgment note was executed in Ohio.

The object of the action is, then, to enforce an equitable distribution of the assets of the insolvent corporation now in the hands of one creditor, between that one creditor and two others. The basis of the jurisdiction invoked is, that the property of the insolvent company within the jurisdiction of this court should be distributed according to the laws of this state.

When the Douglas Furnace Co. made and delivered its judgment note to McKinney, receiver, it had no property of any kind or description within the state of Ohio. Speaking now of the property of that corporation, other than accounts, can it be said that there is now property of the insolvent corporation in the state, subject to distribution by the courts of this state?

The insolvent corporation having its location in Illinois, had property in Pennsylvania. It made the note referred to, in Ohio, and the payee, McKinney, took it to Pennsylvania and according to the laws of that state and by the judgments of the courts of that state obtained a judgment against the Douglas Furnace Co. Property in Pennsylvania was seized on and by virtue of an execution issued on such judgment, the property seized was sold in accordance with the laws of that state, and under the judgment of the court distributed to the persons entitled to receive it,—a portion to preferred claims, costs and taxes; and the balance to Price McKinney, receiver, to be applied upon the judgment that he had taken in that state. The judgment to the extent of this payment has been cancelled. The debt was merged in the judgment, and the judgment cancelled, all in strict accordance with the laws of Pennsylvania. The fact that the note upon which that judgment was rendered, was executed in Ohio, or made in Ohio, did not deprive the court of Pennsylvania of its jurisdiction to render that judgment and distribute the property within its jurisdiction according to the laws of the state of Pennsylvania.

Under these circumstances, we are of the opinion that there is now no property in Ohio, belonging to the Douglas Furnace Co. subject to distribution either in equity or by our statute. Certainly it can not be that the courts of this state will take from a creditor of this state, that

which has been rightfully adjudged to him by the laws of a sister state.

The contract—the note given to McKinney,—was enforced in Pennsylvania, whether so intended or not. We do not perceive that it makes the slightest difference that that note was executed in Ohio. It has in a lawful way been paid and cancelled.

It is not denied that contracts are to be interpreted by the law of the place where executed; but we know of no rule of law in this state, that makes it unlawful for an insolvent corporation to make and deliver to one of its creditors a judgment note; if done with the intent to give a preference to one creditor over others and to enable him to seize and appropriate the property of others in this state in preference to other creditors, it might not be sustained. The doctrine in the case of Rouse v. Bank, *supra*, however, may not be extended to a transaction of that kind. However, that may be, we are of the opinion that it is neither unlawful nor wrongful for a foreign corporation, although insolvent, to make and deliver to a creditor residing in this state, a judgment note with the intent that judgment thereon shall be taken in another state and property there situated appropriated to its payment in accordance with the laws of the state where the property is found; and that we think was this transaction. Nor do we think that the assignment by a foreign corporation to a creditor residing in this state, of the accounts which it has and owns, and which, of course, has its *situs* in the place, the home of the corporation, falls within the decisions and principles of the case of Rouse v. Bank, *supra*.

It is quite clear, as a question of fact, that under the laws of Pennsylvania the trust doctrine announced in the Rouse case does not prevail. Neither does it prevail in the state of Illinois.

The proof offered, however, to establish the fact that that rule does not prevail in the state of Illinois, hardly establishes that fact. The decisions of the state, however, do fully establish that fact, outside of those that were offered in evidence. With those facts established that in Illinois this corporation held its property precisely as an individual with the same right of disposing of it as an individual, and the fact that in the state of Pennsylvania the corporation held its property precisely as the individual would hold it, with the same rights, the corporation being in the one state, and the property in another, we fail to see how this court would have jurisdiction over the corporation to compel the distribution of this property as claimed. However, that may be, we hold that the case made can not be sustained as a proceeding under the statute; and we also hold that it can not be sustained in equity to enforce a trust in favor of the petitioner and the cross-petitioner, and the petition and cross-petition will be dismissed, and judgment rendered for the defendant McKinney.

Webster, Angell & Cook, for plaintiff.

Burke & Ingersolls and O. C. Pinney for defendant.